The next case on our calendar is Guan v. City of New York. Morning Council. Good morning, Your Honors. May it please the Court, my name is Nicole Valente and I represent the Plaintiff Appellate Kaibin Guan. The officers today, Your Honors, seek the Court's endorsement of a standard that would be valid regardless of New York Mental Hygiene Law 9.41. This Court should reject that approach and reverse the District Court's grant of summary judgment for three reasons. First, a mental health arrest, like the one that Ms. Guan was subject to, requires an independent probable cause showing, and the individual must appear to be mentally ill and conducting themselves in a manner that is likely to result in serious harm to themselves or others. Second— No one made that finding, did they? No one made the finding that she was a danger to herself or to others. You're absolutely right, Your Honor. No one made that finding, and in fact, the magistrate report indicates that while she's skeptical that that finding could be made, it certainly is a question of fact and summary judgment. Do you agree, Ms. Valente, that there was probable cause for the officers to arrest Ms. Guan for the misdemeanors of trespass and disorderly conduct? I think, you know, I think yes. I think that I agree that there is probable cause for trespass and possibly disorderly conduct. I would note that— Go ahead. Conduct does. Much conduct in these sort of circumstances would satisfy a probable cause standard, which is a very low threshold for such misdemeanors. Yeah, but so my concern is that the implications of your argument are that where there is probable cause to arrest someone like Ms. Guan, who's clearly having some kind of crisis, but is trespassing, has been repeatedly trespassing, has been causing a disruption in the emergency room, has been removed from the hospital several times because of 911 calls, that the officers then can arrest her to stop the disturbance and protect the people in the emergency room at the hospital, but then they must take her to the jail. That's what they need to do, is prosecute her, as opposed to then, after arresting her, assess the situation and decide whether she needs a mental health evaluation. Isn't that the implication of your position? I understand, I think, conceptually why that might feel uncomfortable, but that's what the Constitution requires and that's what the precedent requires. The officers don't have the discretion to determine, contrary to the New York Mental Hygiene Law, the legislature's inclination and this court's precedent, that somebody who doesn't satisfy this likelihood of risk of harm should, nevertheless, be subject to a- My concern, though, is that most of the precedent you point to is in situations in which the for a criminal arrest. In those cases, it's clear what the law requires. They have to make a determination of danger to self or others. Here there might have been such a finding or concern, at least, because of the place, the emergency room, where these disruptions were happening over the course of over six hours, but that isn't the circumstance here. Where there's a probable cause to arrest for a criminal incursion, it seems to me, I guess I want to understand that your position is that what the officers then had to do, having probable cause, to stop the disturbance they needed to bring her to the jail and could take no further steps. Is that right? I do. I think that's what the Constitution and the precedent require. There's a probable cause standard for mental health arrests. Could they bring her to the jail and then have a psychiatrist come to the jail to evaluate to see if she needs help or if she is a danger to herself or others? Is that what you'd prefer? That it happened that she went in a patrol car to the jail and the police then bring a psychiatrist to do an evaluation there as opposed to taking her straight to the hospital? Your Honor, I don't think they have a basis to require that kind of evaluation absent the initial probable cause for a likelihood of danger. So their sole option is to bring her to jail and keep her locked up and prosecute her for disorderly conduct. Is that right? That is the probable cause standard that they say is satisfied, and that's the arrest that's Let me ask you about a qualified immunity, if I may, for a moment. The two officers are summoned by the hospital. In fact, they're coming for the second time, and she's clearly trespassing. I mean, there are factual disputes about whether she was screaming, but this is someone who was in distress. What is a reasonable officer supposed to do? Is a reasonable officer supposed to go through two different analyses? Is there enough for a criminal arrest? Is there enough for a mental health arrest? Why isn't it? Is it clearly established that the officers can't make the arrest in that context? So I think there are two questions, right? And I do think it's two analyses, but it's what arrest are the officers making? If the officers are making it a criminal arrest, then a reasonably competent officer, given the facts of this case, may have been permitted to make a criminal arrest, to bring her to the precinct, to charge her, to give her a ticket, whatever the case. But I guess my question is, is it reasonable to require an officer to make this dual analysis? Am I making a mental health arrest? Am I making a criminal arrest? And go through the different standards? Is it clearly established that that is what must happen? With all due respect, Your Honor, I don't think that we're asking too much of the officers. If the officers decide in the moment they want to make a mental health arrest, they look at that standard. And if they decide in the moment they want to make a criminal arrest, they look at that standard, both of which are clearly established in this precedent and have in this circuit and with the New York law, they have been for decades. But these circumstances are really very intertwined. I mean, and, you know, mental health problems, we look at who's in Rikers and we look at who's in the hospitals. And, you know, there are people who could be in both places easily for both treatment and punishment. So I follow up on Judge Chin's question that it is I don't see it is clearly established in any law in our circuit that where there's probable cause to make a criminal arrest that the officers are precluded from making a determination that as an initial matter for an evaluation, which, you know, is limited under the mental health law to six hours, I think on an emergency basis, that that isn't the better choice for incarceration, if you will, for a temporary deprivation of liberty. What clearly establishes that they are precluded from making that choice? The choice isn't theirs. The mental health hygiene law in New York requires a showing. The question is this, even assuming you're right, that the choice isn't theirs, is it clearly established that they have to go through this? I mean, I'm focusing on the qualified immunity. No, and I understand that to me, the question is, what are they moving forward on? And that's the question of clearly established. I see my time is up if you'd like me to continue or I can wait to rebuttal. Counsel, aren't you referring to the Supreme Court stating that involuntary hospitalization is a massive curtailment of liberty more than the loss of freedom from confinement? So the Supreme Court has ranked them in that order. Isn't that what you're referring to? And isn't that Vitek versus Jones and Rodriguez versus City of New York, those cases? Absolutely. And that's you put it better than I could have. The reason it's a different constitutional standard, the reason that we're looking at it differently is because these courts and the Supreme Court have recognized that in the case of a mental health situation, an involuntary hospitalization or even just an arrest for evaluation that carries with it significantly different both societal and then personal impacts. And so we have to look at them with different analyses. Can I ask a brief follow up, please, which is, do you acknowledge a difference between a temporary hospitalization limited at six hours by state law for an evaluation about whether by experts about whether someone does pose a risk to themselves or others and indefinite involuntary hospitalization for kind of suicidal concerns, you know, violence concerns that after such an evaluation has occurred, do you agree that those are different levels of deprivation of liberty? They are different levels of deprivation of liberty and different levels of compensation and different levels of different kinds of claims. However, the standards that the question of whether somebody has demonstrated that likelihood of serious harm are the exact same. And so the analysis of whether that standard has been met is the exact same. And you see courts across the board applying that in the same way. Thank you. Thank you, counsel. Two minutes for rebuttal. We'll hear from the appellees. Counsel, you may proceed. May it please the court, Kevin Osowski, on behalf of the officer at police. Ms. Guan asked this court to find a false arrest claim where the officers who seized her had probable cause for a criminal arrest, but instead arranged for a mental health care evaluation. It was a misdemeanor, right? They were talking about a misdemeanor arrest for trespass. Yes. So this court should affirm because there was no constitutional violation here. But even if this court does find a violation, the requirement that police have independent probable cause under these circumstances was not clearly established. And so qualified immunity applies. As as several judges here on the panel have already noted, this court has never clearly addressed the question of whether that dual analysis probable cause determination that one's counsel says is required where both criminal and mental health care possibilities are probable cause or possible, whether that's ever been clearly articulated by this court. And the district courts within the Second Circuit have taken the same approach that the district court did here in Kwon versus Henry, which is from a southern district case from the from twenty seventeen and Middleman versus County of Rockland, another southern district case from the from twenty thirteen. Courts have clearly indicated that for purposes of a false arrest claim, probable cause defeats the false arrest claim. Even as Mr. Osowski, shouldn't we be concerned, though, if we uphold the rule that you're advocating for, that your misdemeanors get committed all the time? It's not quite as bad as traffic violations, but regularly in the street. And what would preclude then officers from arresting someone ostensibly for a misdemeanor violation and then taking them for what could be a six hour confinement but could be a longer confinement, having just decided that they had successfully avoided the mental health law requirements and that this person needs to be off the streets? Isn't that a terrible threat to liberty? I don't think that it is, your honor, because of the safeguards that are in place under the mental health, mental hygiene law. So the fact that, as you alluded to earlier, there is a requirement under the law that the person who is brought for the mental health care evaluation is evaluated by a doctor and and that that doctor makes an independent determination that that confinement under the mental hygiene law is appropriate and that, in fact, regardless of whether the person is taken to a hospital or one of the specialized CPEP units, a second doctor needs to make a confirmation that that initial that initial evaluation was correct within 24 hours of receipt to the to the facility. And so I noted that one of the elements of relief that Ms. Guan asked for was expungement of the record of having been confined for this evaluation at the CPEP unit. And that, to me, reflected a concern, a kind of reputational concern. It bore potentially on her ability to continue to care for her adult son who had been confined. And again, you know, arrests for misdemeanors, you know, are something that officers could readily affect and then have the results still of having collateral effects on an individual by taking them to a mental health hospital. How do you respond to that concern that it's too it's a standard that's too easily met? Your Honor, I wouldn't discount the the collateral effects that come from a from a criminal arrest as well. And as Guan's counsel articulated a few minutes ago, she would require officers who have any question about whether probable cause exists for under the mental hygiene law to arrest that person and begin the the criminal criminal process that has the same kind of and potentially even more reputational harm because some of those records are public as opposed to mental health records, which would be under, you know, under medical privacy laws. And the cases that Ms. Guan cites regarding the harm stemming from involuntary commitment all involve cases where a doctor made that determination that the person should be involuntarily committed. Are there differences in the in the type of damages that one suffers if one is falsely arrested under the mental hygiene law versus a misdemeanor for trespass? I think that the damages may may depend on the circumstances that happen after the after the false arrest. And so whether the person part of the reasoning and Jagley and Devenpeck is that whether you're arrested for one criminal charge versus another criminal charge, the damages are essentially the same. So it doesn't really matter which one. Can you say that about the difference between a mental health arrest and a criminal arrest? I think the for the purposes of a false arrest claim asserting that the unconstitutional act was the seizure of the person up until in the mental health context, up until the the independent determination by the by the treating physician, the fact that the person is being held is the same type of hold, the same type of damage that would happen regardless of whether that person was being held in the back of a squad car or being held at the jail or being being held at the at the hospital. And we don't see a significant difference in terms of damages there. And again, if the if the initial seizure, if the officers had probable cause at the time of the seizure, then no false arrest claim arises. You know, relatedly, I had asked earlier about in the qualified immunity context, but why shouldn't we require police officers to engage in a dual analysis considered both whether there's probable cause for mental health arrest and or probable cause for a seizure? And it boils down to the first about first about what this court and what the Supreme Court have required in terms of of officers and under Devin Peck and Jigley for purposes of a false arrest claim when at the moment of the arrest of the officers have a probable cause for that seizure, regardless of whether they know what the probable cause, you know, what that that appropriate probable cause is. But in either of those cases, rule ruled that probable cause for a criminal arrest privileges, a false arrest claim in the context of a false mental health arrest or involuntary hospitalization. That is, there's probable cause for a criminal arrest. Give them the right under either of those cases that you mentioned to make a mental health arrest. Your Honor, this court has never made that never made that statement, though other other courts within the within the Second Circuit have more clearly articulated that probable cause for a criminal arrest is is sufficient. And that's that's one of the reasons why we think qualified immunity should apply here. But back to Judge Shin's question about the the circumstances and the incentives for for police to make a complicated assessment under that mental hygiene law here, for example, where a doctor told them that one needed to be hospitalized. And if they're wrong, they risk liability for false arrest under 1983. And at least some officers are going to take the conservative approach when faced between faced with that rock in a hard place and proceed with criminal booking as the officers undisputably could have done here. But is there any basis in the record for a concern that that Ms. Guan may have been actually causing creating a situation where other people were in danger? She was in an emergency room in a major metropolitan hospital. She had been, according to at least the officers and the staff accounts and the incident reports, had been yelling and screaming and demanding to see her son and had not gone away over the course of about six hours and in fact, kept repeatedly coming back. I wondered about whether there was any basis or whether the officers said at any point that they were concerned that it caused a disruption that might be harmful to others. Your Honor, the officers testimony and even Ms. Guan's fifty six point one statement acknowledged that the officers were told by a doctor at that hospital that Ms. Guan was emotionally disturbed and that she needed to be seen by a doctor. And all of the circumstances that you just described, the fact that she had been in that hospital all day, insisted on seeing her son, was making statements about her son potentially being abused and sexually assaulted while he was in the hospital and her increasing agitation sort of was creating what the officers viewed as a as a powder keg kind of situation. And so it's it's reasonable that even the magistrate judge here, who cited against found against the officers at the initial stage of the report and recommendation, acknowledged that whether there was probable cause under the mental health law was a upon the magistrate. The magistrate judge also said in denying summary judgment as to qualified immunity that there were too many unanswered questions. And how do you respond to that? I mean, there do seem to be some some unanswered questions here. Your Honor, we think that the district court properly analyzed the situation and found first that the district judge did it in a footnote. I mean, the magistrate judge did a pretty thorough job. Your Honor, I don't I don't think that the court needs to get to the fact the magistrate judge said there were questions, the fact that precludes summary judgment, like what you just said or someone just said that the doctor said she needed to see a doctor. But we don't know who that doctor is, what he was doing, what he said. He doesn't even know if it's male or female. What he reported. I don't remember. I'm going to miss one. How can we grant summary judgment on that kind of factual basis? Well, Your Honor, the court doesn't need to get into the facts in order to grant summary judgment here, both because of the qualified immunity question that we discussed a few minutes ago and and because we believe that that we are right on the merits. And because the officers undisputedly had probable cause to seize Ms. Juan, she she has no false arrest claim. Thank you, counsel. Ms. Valente, you have three minutes or two minutes for rebuttal. Thank you, Your Honor. And I think I'll pick up right where my opposing counsel just ended, which is the questions of fact here. I know they didn't he didn't identify a single fact leading to violence. And he notes this concept of a potential powder keg, but that doesn't you don't see that anywhere in the district court's opinion. You don't see that in the magistrate court's opinion, in the magistrate judge's opinion or report and recommendation. And what about the what about the assertion that Ms. Juan conceded below that the officers were told by a doctor that she was emotionally disturbed, but emotionally disturbed under any precedent before this court or otherwise is not sufficient to demonstrate a serious risk of harm. And if you look directly at what the New York legislature has defined, that likelihood of serious harm. We're talking about threats of homicidal or suicidal behavior, certainly not something to the effect of a doctor who there's no evidence ever even saw or evaluated Ms. Juan's decision in a different room where Ms. Juan is not even present. So question of fact, I just there's no way under the precedent that that can be sufficient at summary judgment on a question of arguable probable cause or regular probable is just not enough. And I think we talked a lot about clearly established and it's important to recognize that in false arrest claims, clearly established is whether there's arguable probable cause. So in all false arrest claims, when you're determining whether something is clearly established, you look to see if there is a reasonably competent officer could find probable cause here. And given what we know, given the facts in this record, particularly in summary judgment, there is just nothing that somebody can point to. What case what case do you rely on to show that it's clearly established that where there is probable cause for a criminal arrest, officers are precluded from obtaining taking the person for a mental health evaluation instead? You're right, Your Honor, I don't have a case that clearly looks at this issue specifically, but that's not the test. The test is not do you have a case that's directly on point? It's whether the right writ large has been established and the right to be free from a mental health arrest absent probable cause is clearly established both in this district and with the New York legislature. Thank you, Your Honors. Thank you, thank you, both will reserve decision on this interesting case, well argued and well briefed, also well briefed on both sides. I will ask the clerk to adjourn court. Our sent to judge, thank you. Our sent to judge, thank you. Our sent to judge, thank you.  Our sent to judge, thank you.